Filed 10/1/15  In re D.F. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| In re D.F., a Person Coming Under the Juvenile Court Law. | C078931 |
| EL DORADO COUNTY DEPARTMENT OF HUMAN SERVICES, | (Super. Ct. No. PDP20130139) |
| Plaintiff and Respondent, | |
| v. | |
| B.S., | |
| Defendant and Appellant. | |

Mother appeals from the juvenile court's order terminating her parental rights. She contends the beneficial parent-child relationship exception to adoption applies, and, despite her failure to timely petition for an extraordinary writ, challenges the order denying her reunification services.  She argues she is entitled to challenge the denial of

1

services in this appeal; we agree for the reasons we explain. After considering mother's challenges on their merits, we shall affirm the juvenile court's orders.

## BACKGROUND

In December 2013, the minor's newborn half sibling tested positive for methamphetamine. The El Dorado County Department of Health and Human Services (the Department) detained the baby and the then five-year-old minor and filed a petition alleging mother was using methamphetamine, had a significant substance abuse history from which she had failed to rehabilitate, had used methamphetamine while pregnant with the half sibling, and did not consistently attend recovery support meetings. (Welf. & Inst. Code, § 300, subds. (b) & (j).)[1] Juvenile courts had sustained previous allegations against mother in February 2011 for physical abuse and severe neglect of the minor and in October 2012 for abusing methamphetamine. Mother had previously been provided with reunification services through both San Joaquin and El Dorado counties. Mother submitted for purposes of jurisdiction, and the court sustained the allegations in the petition. The minor's father is deceased, and in January 2014 the Department placed the minor with his aunt.

*Mother's Substance Abuse History*

Between 2005 and 2010, mother was arrested eight times for drug offenses. In 2006, she pleaded guilty to a drug possession offense and was granted deferred entry of judgment (DEJ). At some point after her plea, she participated in and completed an 18-month drug treatment program as part of her DEJ requirement.[2] In January 2009, mother

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code. This appeal does not challenge any findings or orders related to the half sibling.

[2] For DEJ, a defendant is required to enter a guilty plea and formal judgment is deferred. If DEJ is successfully completed, the charges are dismissed. (See *People v. Orihuela* (2004) 122 Cal.App.4th 70, 72-73; Pen. Code, §§ 1000-1000.4.) If, after a hearing, the court finds a defendant is not satisfactorily performing or benefitting from treatment, or is

was arrested two times for drug possession. She was again arrested for drug possession in May 2009 and September 2010.

*Prior Dependency Case*

Mother's history with San Joaquin County Child Protective Services included multiple reports of neglect and allegations of drug use as early as 2008. In November 2010, the then two-year-old minor was severely beaten and malnourished; in 2011, the San Joaquin County Juvenile Court sustained allegations against mother for physical abuse and severe neglect of the minor. In 2012, the El Dorado County Juvenile Court sustained additional allegations against mother for abusing controlled substances, including methamphetamine and alcohol. She was provided with reunification services in both counties.

As part of her services, mother was ordered to participate in drug treatment. She received inpatient services for substance abuse at the Progress House treatment center and successfully completed a transitional program. However, while there she also tested positive on at least two separate occasions for alcohol, methamphetamine, and amphetamine. She relapsed, using methamphetamine while receiving family maintenance services. She ultimately reunified with the minor and the prior dependency case was closed on July 22, 2013.

*Current Dependency Case*

The minor's half sibling was born on December 3, 2013, and tested positive for amphetamine. Mother initially denied any illegal drug use. Later, she admitted she had snorted methamphetamine while pregnant and claimed she had found and used

---

otherwise unsuitable for DEJ, "the court shall render a finding of guilt to the charge or charges pled, enter judgment, and schedule a sentencing hearing . . . ." (Pen. Code, § 1000.3.) There is no record of mother's actual conviction on the 2006 drug arrest on her CLETS (criminal records) check, and CLETS indicates, "com: 18-month program" in conjunction with the DEJ disposition. Accordingly, we infer mother completed her treatment program. No party argues to the contrary.

methamphetamine at work.[3]  She admitted she was a drug addict, that she had fallen behind in her 12-step recovery process, and that she did not attend regular meetings.  The Department referred her to the New Leaf drug treatment center and authorized drug testing and outpatient services.  As of the February 21, 2014 disposition report, mother was not participating in a residential treatment program, but claimed she had contacted Hope House treatment center.  The Department had not received confirmation that mother had been accepted into that program.

The disposition report prepared in February 2014 opined that while mother might "not have an extensive, chronic pattern of drug abuse and use," her drug use had placed "all of her children at great risk of harm and neglect.  [Mother's] oldest child is living with his father, her next child, [the minor] is in foster care due to her substance abuse, her third child, was adopted at birth and Noah her youngest is in foster care due to being tox positive for methamphetamines and THC."  Nonetheless, at that juncture the Department was prepared to offer mother reunification services.

The Department prepared an addendum report prior to the contested disposition hearing (then set for April 21, but continued to May and finally heard June 17), wherein the social worker reported that mother had said she was still attempting to get into Hope House; however, Hope House reported that mother had not turned in the necessary paperwork for acceptance and had failed to follow through with the intake program.  Mother had attended an assessment appointment with the El Dorado Council on Alcoholism (EDCA) and received an initial treatment plan; however, after more than 30 days with no attendance at treatment, EDCA reported mother needed a new assessment.  In April 2014, mother completed a second assessment, which indicated she had a high probability of substance abuse.  By the end of April, mother had still "not done anything"

---

[3]  In the prior dependency case, mother had also said she had found methamphetamine in a drawer at work and used it.

with EDCA. Mother claimed she was attending AA meetings three times per week but did not provide any supporting documentation. As of mid-April, the social worker recommended that mother be denied reunification services pursuant to section 361.5, subdivision (b)(13). The bypass recommendation continued in the May addendum, with the social worker noting that mother "has yet to be honest" about her "ongoing battle with substance abuse."

Mother was present at the June 17, 2014 disposition hearing, and admitted through counsel that she had previously been ordered to participate in drug treatment, completed the treatment, successfully reunified with the minor, and relapsed. She argued this history did not show a failure to rehabilitate as defined by the bypass provision in that the record did not show "continuous habitual use" but instead "simply a mere relapse." She noted that she had competed both inpatient and outpatient drug treatment in the prior dependency case. Minor's counsel also acknowledged that mother had received "substantial substance abuse services" in the prior dependency case.

The juvenile court (Melikian, J.) agreed with the Department's recommendation and found mother showed continued poor judgment and lacked necessary parenting skills. The court denied mother reunification services under section 361.5, subdivision (b)(13) and set a selection and implementation hearing pursuant to section 366.26. At that hearing, held on February 10, 2015, mother chose to leave the courthouse prior to the hearing and was not present thereat. The juvenile court (Brooks, J.) found by clear and convincing evidence the minor was likely to be adopted and terminated mother's parental rights. Mother appealed that order.

## DISCUSSION

### I

### *Failure to File a Writ Petition*

Mother acknowledges she did not file a timely writ petition following the denial of reunification services. She argues that her claim is not barred, however, because the juvenile court did not orally advise her of the writ requirement. We agree.

A. *Background*

At the conclusion of the hearing setting the selection and implementation hearing, the juvenile court failed to orally advise mother that she must file a notice of intent and petition for extraordinary writ in order to preserve her right to appellate review of the order setting the hearing. The *written* order contained the advisement, but the record does not show service to mother or any notification in any form whatsoever.[4]

Mother submitted a notice of intent on June 27, 2014, which was received but not filed by the clerk. The clerk filed a notice of untimely receipt of notice of intent, advising a due date of June 24 and that no further action would be taken by the court on the late-filed notice of intent. The proof of service reflects notice to county counsel, minor's counsel, and mother's counsel, but not mother.

B. *Law and Analysis*

Mother claims she is entitled to challenge the denial of services in this appeal due to lack of advisement on the writ requirement. We agree.

An order denying reunification services and setting the section 366.26 hearing is not an appealable order; it can be reviewed only by a writ petition. (*In re Athena P.*

---

[4] County Counsel writes that mother "was present at the time the [juvenile court] reviewed the Findings and Orders, which included a clear and explicit written advisory," citing the order *itself* but without any cite to the reporter's transcript or a minute order showing that this information was conveyed *to mother* by any means.

(2002) 103 Cal.App.4th 617, 624-625.)  The failure to take a writ from a nonappealable dispositional order forfeits any challenge to that order, except if the juvenile court fails to advise a parent of the writ petition requirement.  In that case, the parent generally has good cause to be relieved of the requirement.  (*Id.* at p. 625.)

When a juvenile court orders a hearing pursuant to section 366.26, it is obligated to advise the parties of the requirement.  (§ 366.26, subd. (*l*)(3)(A); Cal. Rules of Court, rule 5.590, subd. (b).)  If a party is present at the hearing at which the section 366.26 hearing is set, the court must orally advise the party of the writ requirement; if the party is not present, the writ advisement must be mailed by first class mail to that person's last known address.  (§ 366.26, subd. (*l*)(3)(A).)

Here, mother was present at the disposition hearing at which the juvenile court denied her reunification services and set the section 366.26 hearing.  However, the juvenile court did not orally advise her of her writ rights; further, there is no evidence that she received the advisement in writing.  The clerk later rejected her notice of intent as untimely filed.  The notice of untimely receipt was sent to mother's attorney, but there is no proof of service establishing mother received that notice.[5]  Service on mother's attorney did not satisfy the juvenile court's obligation to provide mother with notice.  "The 'burden is on the *parent* in a juvenile dependency case to pursue his or her appellate rights[; i]t is not the *attorney's* burden.'  [Citations.]  In the absence of a specific direction from the mother, her attorney in the juvenile court was not obligated to take any steps to comply with section 366.26, subdivision (*l*), on the mother's behalf.  Because the mother had not been notified that she must seek relief by writ petition under this statute,

---

[5]  The time to file a notice of intent is extended by an additional five days if the notice is given to the parent by mail.  (*In re Cathina W.* (1998) 68 Cal.App.4th 716, 721.)  We note mother's notice of intent was filed within the time allowed where notice is received only by mail, although the record does not show mother was given *any* notice.

7

she could not very well have directed her attorney to take steps to do so." (*In re Cathina W., supra,* 68 Cal.App.4th at pp. 723-724, fn. omitted.)  Similarly, because mother did not receive the notice that the juvenile court had rejected her filing, she could not direct her attorney to make an effort to remedy the problem.  This compounded the error that began with the failure to orally advise her in court as required by statute and rule.

"In California, the right to appeal is entirely statutory.  [Citations.]  The Legislature has decreed that no direct appeal lies from an order setting a section 366.26 hearing.  [Citation.] . . . [¶]  Because the right to appeal is purely statutory, an appellate court cannot confer the right to appeal as a remedy for the juvenile court's failure to advise a party of the writ requirement.  [Citation.]  Instead, we believe the proper approach to the juvenile court's failure to advise a party of the writ requirement is that the party is entitled to obtain direct review of the order setting a section 366.26 hearing by way of an ordinary petition for writ of mandate, without regard to the shortened period for writ review that would otherwise be applicable.  [Citation.]" (*Jennifer T. v. Superior Court* (2007) 159 Cal.App.4th 254, 260.)  Due to the juvenile court's failure to advise mother of her writ rights, we excuse her "lack of compliance with the writ requirement and construe her purported appeal as a petition for extraordinary writ." (*Maggie S. v. Superior Court* (2013) 220 Cal.App.4th 662, 671; cf. *In re Rashad B*. (1999) 76 Cal.App.4th 442, 450 [violation of the notice requirements excuses a parent from the duty to file a writ and allows him or her to assert any issues which arose at the setting hearing in an appeal from orders terminating parental rights].)

II

*Denial of Services*

Mother contends there is insufficient evidence to support the juvenile court's denial of reunification services under section 361.5, subdivision (b)(13).[6] She claims there is no evidence of chronic drug use in the three years preceding the filing of the petition. We find there is substantial evidence supporting the denial of services.

Ordinarily, when a child is removed from parental custody, the juvenile court must order services to facilitate the reunification of the family. (§ 361.5, subd. (a).) " ' "Nevertheless, as evidenced by section 361.5, subdivision (b), the Legislature recognizes that it may be fruitless to provide reunification services under certain circumstances. [Citation.] Once it is determined one of the situations outlined in subdivision (b) applies, the general rule favoring reunification is replaced by a legislative assumption that offering services would be an unwise use of governmental resources." ' [Citation.] An order denying reunification services is reviewed for substantial evidence. [Citation.]" (*R.T. v. Superior Court, supra,* 202 Cal.App.4th at p. 914.)

First and foremost, the bypass provision at issue here *does not require* proof of chronic drug use in the three years preceding the filing of the petition. As relevant here,

---

[6] Mother also argues the juvenile court abused its discretion in failing to order services under section 361.5, subdivision (c), which provides in part: "The court shall not order reunification for a parent or guardian described in paragraph (3), (4), (6), (7), (8), (9), (10), (11), (12), (13), (14), or (15) of subdivision (b) unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child." This argument is not well-taken. "This subdivision becomes relevant *only* if one of the enumerated bases for denying reunification services applies *and* the juvenile court contemplates exercising its discretion to order services regardless. If the court contemplates ordering services, section 361.5, subdivision (c), requires that the court first find that reunification is in the best interest of the child, as outlined above. Here, the juvenile court was not required to make a finding under subdivision (c), given its decision not to order services, and consequently it made no such finding." (*R.T. v. Superior Court* (2012) 202 Cal.App.4th 908, 913, fn. 3.)

section 361.5, subdivision (b)(13) authorizes the denial of services to a parent who "has a history of extensive, abusive, and chronic use of drugs or alcohol and has resisted prior court-ordered treatment for this problem during a three-year period immediately prior to the filing of the petition that brought that child to the court's attention." Resistance to court-ordered treatment programs does not necessarily mean "opposition to treatment by direct action." (*Laura B. v. Superior Court* (1998) 68 Cal.App.4th 776, 780, citing *Randi R. v. Superior Court* (1998) 64 Cal.App.4th 67, 73.) If a parent previously underwent substance abuse rehabilitation and then, "during the three years prior to the [section 300] petition being filed, . . . evidenced behavior that demonstrated resistance to that rehabilitation," resistance has been proved. (*Laura B.,* at p. 780.) The prior treatment need not have occurred within the three years before the filing of the section 300 petition; only the resistance to treatment need have occurred within the three-year period. (*Laura B.,* at p. 780.) Resistance to treatment may be proven by dropping out of drug treatment programs, resuming regular drug use after a period of sobriety, or refusing to participate in a drug treatment program. (*Ibid.*; *In re Levi U.* (2000) 78 Cal.App.4th 191, 200.) The statute reflects " 'a legislative determination that an attempt to facilitate reunification between a parent and child generally is not in the minor's best interests when the parent is shown to be a chronic abuser of drugs who has resisted prior treatment for drug abuse. [Citation.] In effect, the Legislature has recognized that, under those circumstances, "it may be fruitless to provide reunification services . . . ." [Citation.]' [Citation.]" (*In re Brooke C*. (2005) 127 Cal.App.4th 377, 382.)

Here, mother started using methamphetamine in 2004, at age 17. In May 2006, she received a drug court deferred entry of judgment and participated in an 18-month treatment program. After completing that program, she was again arrested for drug possession on four separate occasions in 2009 and 2010. In 2012, the juvenile court found mother was again abusing controlled substances, including methamphetamine and alcohol. She received substantial substance abuse services, including inpatient services.

10

While receiving services, she tested positive for alcohol, methamphetamine, and amphetamine. She also relapsed and used methamphetamine while receiving family maintenance services. Mother successfully reunified with the minor, and by her own admission, relapsed again, fewer than five months after she completed services and while pregnant. Mother acknowledged she was an addict, requested and received additional services, and then did not participate in any substance abuse services or drug test.

Thus, contrary to mother's argument, her drug abuse was not a single, isolated lapse, but rather a long history of chronic drug abuse, resistance to treatment, and relapse after treatment. The evidence in this record, and the reasonable inferences drawn therefrom, establish mother "has a history of extensive, abusive, and chronic abuse of drugs" and "has resisted prior court-ordered treatment for this problem during a three-year period immediately prior to the filing of the petition that brought that child to the court's attention. . . ." (§ 361.5, subd. (b)(13).) Mother's behavior "has demonstrated a resistance to eliminating the chronic use of drugs or alcohol which led to the need for juvenile court intervention to protect the parent's child. In other words, the parent has demonstrated that reunification services would be a fruitless attempt to protect the child because the parent's past failure to benefit from treatment indicates that future treatment also would fail to change the parent's destructive behavior." (*Karen S. v. Superior Court* (1999) 69 Cal.App.4th 1006, 1010.) Considering the totality of the circumstances in this case, we conclude there is substantial evidence to support the juvenile court's denial of reunification services.

### III

*Exception to Adoption*

Mother next contends the juvenile court erred by finding that the beneficial parental relationship exception to adoption (§ 366.26, subd. (c)(1)(B)(i)) did not apply. We disagree and conclude that substantial evidence supports the juvenile court's finding.

11

A. *Background*

At the time of the hearing, the minor was living with his aunt, and had been there since January 2014. He had also lived with her for 10 months in 2012 during the prior dependency case, and on and off for what totaled more than half of his life.

In September 2014, pursuant to the juvenile court's order, Dr. Roeder conducted a bonding study between the minor and his aunt. The minor was doing well in the placement with his aunt and was not displaying any problems with adjustment. He liked living with his aunt, but sometimes wished he was back living with mother. He wanted to live with his aunt until his mom "gets better." He knew his aunt loved him and he loved her. He explained he loved his aunt and mother equally. Dr. Roeder found the minor was bonded with both his aunt and mother. He concluded removing the minor from the aunt would be harmful to the minor. The minor was "doing very well for a child who has experienced the dramatic and traumatic level of abuse he sustained when he was younger, and his positive functioning is likely due in part to the consistency and stability provided by his [] aunt who has always been there for him as long as he can remember. . . . [T]he evaluation results confirm he enjoys a good relationship and positive attachment with his [aunt], it would be harmful to [the minor] and his emotional development and adjustment to sever this bond, and it is clearly in his best interest to remain in the care of his aunt unless or until his mother becomes capable of assuming parental responsibilities, if ever."

The aunt indicated she and her partner wanted to adopt the minor.

At the April 18 disposition hearing, the juvenile court had declined to order a bonding study between mother and the minor, observing that mother had "dug herself such a hole, I'm not so sure what a bonding study can do to help us." Later, at the June 17 contested hearing, after terminating mother's services, the court did order a bonding study but there is no indication in the record that the study was completed or what the outcome was if so. Mother does not argue error from the apparent failure to complete the

12

study; as we discuss *post*, the parties assumed the minor and mother were bonded in the trial court and continue to make the assumption on appeal.

B. *Law and Analysis*

Mother argues that she and the minor were bonded to the degree that the beneficial relationship exception to adoption applied. We conclude that she has not met her burden to show the exception applies.

At the selection and implementation hearing, the juvenile court must choose one of four alternative permanent plans for a minor. The permanent plan preferred by the Legislature is adoption. If the minor is adoptable, the court must terminate parental rights absent a showing of detriment to the minor. (*In re Ronell A*. (1996) 44 Cal.App.4th 1352, 1368.) The parent has the burden of establishing by a preponderance of the evidence that a statutory exception to adoption applies. (*In re Valerie A*. (2007) 152 Cal.App.4th 987, 998; *In re Zachary G*. (1999) 77 Cal.App.4th 799, 809.) To prove the beneficial parental relationship exception applies, mother must show she has "maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) The benefit to the child must promote "the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent[s'] rights are not terminated." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.)

It is not enough simply to show "some benefit to the child from a continued relationship with the parent, or some detriment from termination of parental rights." (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1349.) Even frequent and loving contact is

13

not sufficient to establish this benefit absent a significant positive emotional attachment between parent and child.  (*In re Beatrice M.* (1994) 29 Cal.App.4th 1411, 1418-1419; *In re Teneka W.* (1995) 37 Cal.App.4th 721, 728-729; *In re Brian R.* (1991) 2 Cal.App.4th 904, 924.)  We uphold a juvenile court's ruling declining to find such an exception if the ruling is supported by substantial evidence.  (*In re Zachary G.*, *supra*, 77 Cal.App.4th at p. 809.)

The Department does not dispute that mother was consistent with her visitation, and the record does not indicate otherwise.  Likewise, it appears that the minor was bonded with mother.  Minor's counsel in the juvenile court agreed the two were bonded (but observed that the minor was six years old and had been in the child protective system for three years).  As we have noted, Dr. Roeder's report observed that the minor was bonded to his mother (as well as to his aunt).  We assume that mother and child were bonded for the sake of argument, as does the Department on appeal.  However, as we have described, whether a parent/child bond exists is not the test of whether the minor derives benefit from his relationship with mother to the degree required for the exception to apply.  The exception requires benefit to the degree that severing the natural parent/child relationship would cause the minor great harm.

Mother chose not to attend the selection and implementation hearing and presented no evidence to support application of the exception.  There was simply no showing that severing their parent/child relationship would cause the minor great harm.  The minor was equally bonded with mother and the aunt.  He had lived with his aunt for over half of his life and was happy with her and doing well.  Dr. Roeder concluded it was in the minor's best interests to remain with the aunt and that removing him would be harmful to his emotional development and adjustment.  The evidence in this case was that the minor felt secure in his placement, and that continuing with his aunt was in his best interests.  We conclude that substantial evidence supports the juvenile court's determination that the parent-child relationship exception did not apply.

14

**DISPOSITION**

The orders of the juvenile court are affirmed.

                                              DUARTE , J.

We concur:

     HULL , Acting P. J.

     BUTZ , J.